UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION OF ) <br> THE UNITED STATES OF AMERICA FOR AN ) <br> ORDER AUTHORIZING THE ) <br> INSTALLATION AND USE OF A PEN ) <br> REGISTER, TRAP AND TRACE DEVICE, ) <br> AND CALLER IDENTIFICATION SERVICE ) <br> ON THE BLACKBERRY DEVICES ) <br> ASSIGNED PERSONAL IDENTIFICATION ) <br> NUMBER DBB7FAE8, D62D98A6, ) <br> DCFE3A4D, AND DBAADA8B ) | MISC. NO. 2:18 mj 130 <br><br> FILED UNDER SEAL |

## APPLICATION

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this application for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace device ("pen-trap devices") on the Blackberry Device assigned Personal Identification Number ("PIN") DBB7FAE8, D62D98A6, DCFE3A4D, and DBAADA8B ("TARGET DEVICES"). In support of this application, the United States asserts:

1. This is an application, made under 18 U.S.C. § 3122(a)(1), for an order under 18 U.S.C. § 3123, authorizing the installation and use of a pen register and a trap and trace device.

2. Such an application must include three elements: (1) "the identity of the attorney for the Government or the State law enforcement or investigative officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and (3) "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b).

3. The undersigned applicant is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

4. The law enforcement agency conducting the investigation is the Drug Enforcement Administration ("DEA").

5. Pursuant to 18 U.S.C. § 3123(b)(1)(A) and (B), the identity of the person(s) to whom is leased or in whose name(s) is listed the TARGET DEVICES, are unknown at this time, and the DEA is investigating a criminal organization, in which the identities of many of the subjects of the investigation are unknown, at this time. 18 U.S.C. § 3123(b)(1)(B).

6. The applicant hereby certifies that the information likely to be obtained by the requested pen-trap device is relevant to an ongoing criminal investigation being conducted by the DEA. Specifically, the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation of possible violations of various sections of the United States Code, including Title 21 United States Code §§ 959, 963, among others, being conducted by the Drug Enforcement Administration ("DEA").

## ADDITIONAL INFORMATION

7. Other than the three elements described above, federal law does not require that an application for an order authorizing the installation and use of a pen register and a trap and trace device specify any facts. The following additional information is provided to demonstrate that the order requested falls within this Court's authority to authorize the installation and use of a pen register or trap and trace device under 18 U.S.C. § 3123(a)(1).

8. A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the

originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

9. In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to other kinds of wire and electronic communications, as described below.

10. Individuals who utilize Blackberry's Personal Identification Number ("PIN") communication system as an alternate to traditional telephone numbers or email accounts to communicate can do so via two communication systems offered by Blackberry. The first communication system is called "PIN-to-PIN messaging." This process involves the use of the hexadecimal personal identification number that is hard-coded into each Blackberry device. Users can send each other asynchronous messages (*i.e.*, messages that do not require both parties to be connected and "present" at the same time). PIN-to-PIN messaging is therefore similar to text messaging, and does not involve the use of email addresses or email server infrastructure.

11. The second communication system involving these personal identification numbers is identified as "Blackberry Messenger." The users of this communication system communicate via Blackberry Messenger ("BBM"). BBM is Blackberry's proprietary instant messaging service. As in the PIN-to-PIN messaging, BBM uses the hexadecimal personal identification number that is hard-coded into each Blackberry device to communicate. Consequently, this pen register will capture the destination personal identification numbers of outgoing PIN-to-PIN messaging or BBM messages while the trap and trace devices will capture the personal identification numbers of incoming messages.

12. In conjunction with other law enforcement methods, the monitoring of

3

communication patterns of the TARGET DEVICES is likely to assist agents in identifying criminal associates and the general locations which are being utilized by the organization, and is also likely to aid with narcotics trafficking interdiction.

13. The pen-trap devices sought by this application will be installed at location(s) to be determined, and will collect dialing, routing, addressing, and signaling information associated with each communication to or from the TARGET DEVICES, including the date, time, and duration of the communication, and the following, without geographic limit.

## RELEVANT FACTS

14. Based on information provided to me by a special agent of the DEA, I hereby certify that the investigative agency is conducting an ongoing criminal investigation into possible violations of federal criminal laws by as-yet unidentified individuals, including an international conspiracy to distribute drugs in violation of Title 21, United States Code, Sections 959, 963, 952, 846 and 841, and conspiracy to commit money laundering in violation of Title 18, United States Code, Sections 1956 and 1957 ("SUBJECT OFFENSES"), and that the information likely to be obtained from a pen register and trap and trace device on the TARGET DEVICES is relevant to that investigation.

15. Specifically, according to information provided to me by a special agent of the DEA, the DEA has learned that these co-conspirators are involved in the laundering of proceeds derived from the importation and sale of drugs in the United States. There is reason to believe that the pen-trap devices on the TARGET DEVICES will reveal evidence of the money laundering organization and the identity of the individuals involved.

16. Moreover, there is reason to believe that, if the users of the TARGET DEVICES were made aware of the government's knowledge of the TARGET DEVICE, the user of the TARGET DEVICES would cease using the TARGET DEVICES and in all likelihood cease communicating with others in the drug organization about the cocaine trafficking scheme, destroy evidence, tamper with witnesses and possibly flee from prosecution. I am informed by the investigating DEA agent, that any of these actions by the user of the TARGET DEVICES would impede the government's investigation.

## GOVERNMENT REQUESTS

17. For the reasons stated above, the United States requests that the Court enter an Order authorizing the installation and use of pen-trap devices to record, decode, and/or capture the dialing, routing, addressing, and signaling information described above for each communication to or from the TARGET DEVICES, including the date, time, and duration of the communication, and the following, without geographic limit, and <u>specifically</u>: PINS utilized to send or receive communication; headers of email messages, including the source and destination network address, as well as the routes of transmission and size of any attachments to email messages or Blackberry Messenger ("BBM") communications with regard to PIN to PIN, BBM and email message information associated with each communication. The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).

18. The United States further requests that the Court authorize the foregoing installation and use for a period of sixty days, pursuant to 18 U.S.C. § 3123(c)(1).

19. The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a) and (b), that the Court order Blackberry and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this Order to furnish, upon service of the Order, information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service. Any entity providing such assistance shall be reasonably compensated by the DEA, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of this Order.

20. The United States further requests that the Court order Blackberry and any other person or entity whose assistance may facilitate execution of this Order to notify the applicant and the DEA of any changes relating to the TARGET DEVICES, including changes to subscriber information, and to provide prior notice to the applicant, and the DEA before terminating or changing service to the personal identification number.

21. The United States further requests that the Court order that the DEA have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to them, for the duration of the Order.

22. The United States further requests, pursuant to 18 U.S.C. § 3123(d)(2), that the Court order Blackberry and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, the existence of this application and Order, the resulting pen-trap device, or this investigation, except as necessary to effectuate the Order, unless and until authorized by this Court.

23. This United States requests through this Application that the Court order Blackberry, the service provider for electronic communications, to provide assistance in the installation and maintenance of the pen-trap device.

24. The United States further requests that this application and any resulting Order be sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

25. The foregoing is based on information provided to me in my official capacity by agents of the DEA.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on February 23, 2018

Respectfully submitted,
BENJAMIN GLASSMAN
UNITED STATES ATTORNEY

By: *Jonathan J.C. Grey*
Jonathan J.C. Grey
Assistant United States Attorney
303 Marconi Boulevard, Suite #200
Columbus, Ohio 43215